IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR R. GONZALEZ-PAGAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VETERANS ADMINISTRATION CENTER, et al., <br><br> Defendants | CIVIL NO. 14-1795 (MEL) |

**MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

**I.     PROCEDURAL HISTORY**

On October 30, 2014, Héctor R. González Pagan ("González"), his wife Johanna Alma Matos ("Matos"), and their minor child (collectively "Plaintiffs"), filed a complaint against the Veterans Administration Center, the Department of Veterans Affairs represented by its Secretary, Robert A. McDonald[1], the United States, United States Attorney General Eric Holder, and United States Attorney for the District of Puerto Rico Emilia Rodríguez Vélez (collectively "Defendants"). ECF No. 1. This case stems out of González applying for, being given a letter of pre-offer employment regarding, and ultimately being denied a position with the Veterans Administration Clinic in Mayagüez, Puerto Rico. Plaintiffs alleged violations of the constitutional right to due process, Title VII, 42 U.S.C. § 1983 ("§ 1983"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Uniform Services Employment and Re-employment Rights Act ("USERRA"), Servicemembers Civil Relief Act ("SCRA"), and, through the Federal Tort Claims Act ("FTCA"), articles 1802 and 1803 of the

---

[1] Defense counsel's most recent filing now lists David J. Shulkin as the current Secretary of the Department of Veterans Affairs. ECF No. 106.

Puerto Rico Civil Code 31 L.P.R.A. §§ 5141 and 5142 (imposing liability for damages caused by fault or negligence).

On August 5, 2015, the court issued a deadline of November 13, 2015, to file motions to dismiss. ECF No. 22. On April 4, 2016, Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim, and lack of prosecution. ECF No. 30. In light of no good cause being shown for Defendants' failure to file the motion to dismiss until almost five months after the expiration of the deadline, the portion of the motion requesting dismissal for failure to prosecute was summarily denied. ECF No. 39. The court, however, issued a subsequent opinion dismissing all claims pursuant to the FTCA (as well as claims under articles 1802 and 1803 of the Puerto Rico Civil Code) and all claims under the ADA with prejudice. ECF No. 52.

On July 14, 2016, the parties attended a pretrial and settlement conference. ECF No. 53. At this conference Plaintiffs voluntarily desisted in pursuing their claims under §1983 and Title VII, and agreed to their dismissal with prejudice. Id. Plaintiffs also stipulated that González (hereinafter "Plaintiff") is the only remaining plaintiff in this lawsuit. Id. In light of these stipulations and clarifications, all Title VII claims, all §1983 claims, and all claims by Matos and the minor were dismissed with prejudice. Id. Plaintiff also clarified that the United States Attorney General and the U.S. Attorney for the District of Puerto Rico were not intended to be parties to the suit. Id. Therefore, any claims against the same were dismissed with prejudice. Id. Thus, the only defendant that remained active was the Department of Veterans Affairs as represented by the agency head, Secretary Robert A. McDonald. Id. In summary, remaining after the pretrial conference were Plaintiff's claims against the Department of Veterans Affairs and its Secretary in

his official capacity, for alleged violations of the ADEA, USERRA, and the constitutional right to due process. Id.

On August 22, 2016, Defendants filed yet another motion to dismiss the complaint for lack of subject matter jurisdiction. ECF No. 65. The court issued an opinion dismissing Plaintiff's due process claim with prejudice and his USERRA claim without prejudice. ECF No. 77.

A bench trial was held on Plaintiff's ADEA claim against the Department of Veterans Affairs (hereinafter "Defendant" or "VA") on December 18, 2017, and December 19, 2017. ECF Nos. 96; 97.[2] Plaintiff and the Department of Veterans Affairs subsequently submitted post-trial briefs. ECF Nos. 104; 105. Upon consideration of the evidence presented at trial, the post-trial memoranda, and the entire record in this case, the court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

Héctor R. González-Pagán was born in 1959, has a Bachelor of Arts in History, and he was in the Army from 1978 until he retired in 2014. In November 2010, he applied online for a Medical Support Assistant ("MSA") position at the Veterans Administration Clinic in Mayagüez, Puerto Rico. Ex. X, ¶ 1. Plaintiff was fifty-one years old when he applied to this position. Trial, Dec. 18, at 10:25 AM. Iris Alemán-González ("Alemán"), former chief of recruitment and staffing section of human resources at the VA hospital in San Juan, Puerto Rico,[3] clarified that Plaintiff applied for an MSA Cashier position. Trial, Dec. 19, at 9:34–9:35 AM, 10:01 AM; see Gov't Ex. A.[4]

---

[2] Although not all of the exhibits from the bench trial are cited in this opinion, for easy reference, all exhibit numbers and letters will be labeled the same here as they were at the bench trial. Certain information has been redacted from Exhibits I, II, V, and VII, because these exhibits contain a home address. See Local Civil Rule 5.2(a).
[3] Alemán held this position for about ten years and her duties included overseeing the recruitment process to make sure that hiring was done in accordance with regulations and laws. Trial, Dec. 19, at 9:35 AM.
[4] At this point in her testimony, Alemán was referring to Government Exhibit A. The second page (00145) of this exhibit describes the MSA position but also notes that the individual also "serves as the MOPC Beneficiary Travel

On December 8, 2010, the Department of Veterans Affairs sent Plaintiff a pre-offer employment letter including instructions for completing the hiring process. Ex. X, ¶ 2. This letter did not contain a start date and Plaintiff testified that he was never given a start date. Trial, Dec. 18, at 11:10 AM; Ex. II. Alemán testified that the pre-offer letter was not a final offer of employment for the Plaintiff. Trial, Dec. 19, at 9:39–9:41 AM; Ex. II.[5] Furthermore, she testified that an individual is not an actual employee until they receive a final offer. Trial, Dec. 19, at 9:38 AM. As requested, Plaintiff successfully completed a security/background check, a medical screening, and fingerprinting. Ex. X, ¶ 3. However, even upon completing these requirements, a person who receives a pre-offer of employment will remain on pending status until there is approval for a final offer. Trial, Dec. 19, at 9:42 AM, 3:25–3:27 PM. Moreover, a final offer has a commencing date and cannot be canceled whereas a pre-offer can be canceled. Id. at 10:17–10:18 AM.

In January 2013, the Department of Veterans Affairs to the Congressional Representative of Puerto Rico acknowledged that Plaintiff had been selected for a position, but explained that he was not permitted to start in the MSA position:

> [D]ue to the budget constraints on and around the end of December 2010, the Director of the VA Caribbean Healthcare System made a decision to place a hold on the appointments until a full assessment of the situation was addressed. At that

---

Cashier . . . ." Gov't Ex. A, at 145. Thus, while this was not clarified during the testimony, it appears that the MSA cashier position is the same as the MSA travel position. Moreover, as discussed below, Alemán later referred to this position as an MSA for travel position. Trial, Dec. 19, at 11:01 AM; Gov't Ex. D, at 1.

[5] This was supported by her testimony in regards to Government Exhibit D. Trial, Dec. 19, 10:32–10:41 AM; see Gov't. Ex. D, at 1. Alemán testified that Government Exhibit D was a recruitment report for the VA hospital from February 4, 2011. Trial, Dec. 19, at 10:31 AM. Row 20 of this document lists the position as "Medical Support Assistant (Travel Clerk)", the candidate selected as "Hector Gonzalez," there is a check mark under "Pending Appt process/VatPro," and the "Projected On Board date/Pending Release" is "3/13/2011." Gov't Ex. D, at 1. Alemán clarified that an "x" in the selected column indicates that a person has been given a pre-offer of employment but not a final offer of employment. Trial, Dec. 19, at 10:34–10:35 AM. Moreover, the projected on board date pending release is an approximate start date, not an actual start date. Id. at 10:35 AM. Additionally, Government Exhibit D has a legend to indicate which positions were put on hold and which positions were delayed. Id. at 10:36 AM; Gov't Ex. D, at 7. Row 20 was shaded in such a way to indicate it was on hold, as well as rows: 5, 7, 10–22, 27–30, 41–42, 51, 61–63, 69–71, 74–76, and 78–79. Trial, Dec. 19, at 10:38–10:39 AM. Thus, there were several positions that were put on hold throughout the facility. Id. at 10:39 AM.

> point, many candidates selected and in the same status as . . . [Plaintiff] were placed
> on hold until further notice. A few months later, and due to the budgetary situation,
> a decision was made by the Director to eliminate the positions that were previously
> placed on hold. Our Staffing HR specialists were informed about the decision and
> instructed to inform candidates who had received pre-offer letters.

Ex. X, ¶ 4. The testimony of Alemán corroborated this as she testified that around late November or early December 2010, she was told by the executive team that there was going to be a budget constraint for the VA, meaning less money would be received in the budget. Trial, Dec. 19, at 10:02 AM.

On July 8, 2013, Plaintiff received a response to his Freedom of Information Act ("FOIA") request concerning MSA positions filled by the Department of Veterans Affairs San Juan since 2010. Ex. X, ¶ 7. The response showed that certain MSA positions at the Caribbean HCS[6] had been filled between December 2010 and December 2012. Id. The Veterans Affairs Caribbean Health System, in all its clinics, hired from outside the facility seventeen MSA positions between December 1, 2010 to December 31, 2012. Ex. VIII, at 1. "Out of the **17** hires: **12** were Veterans with preference, **2** under Schedule A appointment (People with targeted disabilities), and **3** non vets." Id. (emphasis in original).

Four MSA positions were filled at the Mayagüez VA facility in December 2010, January 2011, February 2011, and July 2012. Ex. X, ¶ 6; Ex. VIII, at 1. The four individuals that were hired were all younger than Plaintiff. Trial, Dec. 18, at 10:23–10:24 AM.[7] One of these individuals was ten and a half years younger than Plaintiff, another was fourteen years younger, and another

---

[6] The Plaintiff and the Defendant failed to state what the acronym "HCS" stands for in their statement of stipulate facts. See Ex. X. However, stipulated fact four provides a paragraph from a written response from the Department of Veterans Affairs to the Congressional Representative of Puerto Rico, where "the VA Caribbean Healthcare System" is referred to. Ex. X, ¶ 4. Moreover, Defendant's FOIA request asked for the number of Medical Support Assistant positions hired within the "Veterans Affairs Caribbean Health System." Ex. VII. Thus, "Caribbean HCS" is referring to the Veterans Affairs Caribbean Healthcare System.

[7] Plaintiff's testimony to this effect was not contradicted by Alemán, who could not recall if the four MSAs hired in Mayagüez were older or younger than Plaintiff. Trial, Dec. 19, at 11:41–11:42 AM.

was twenty-two years younger. Id. at 10:23 AM. Plaintiff, however, could not remember how much younger the fourth one was, but he was clear that the fourth individual was younger than him. Id. at 10:30 AM.

Alemán was asked at trial why four MSA positions were hired for Mayagüez during the same time frame that the Plaintiff's position was put on hold. Trial, Dec. 19, at 11:00 AM. She testified that this was because there are different types of MSAs. Id. at 11:01 AM.[8] Some MSAs are for different sections and different positions. Id. For example, there is a difference in the responsibilities and duties of an MSA in a Patient Alignment Care Treatment ("PACT") position and an MSA not in a PACT position. Id. at 3:29 PM.[9] A PACT position was part of an initiative nationwide, where the VA decided to make teams and the VA sent specifically budget funded personnel for those teams. Id. PACT positions were funded positions for the new program so they were approved to go ahead and recruit. Id. at 2:23–2:24 PM. The position that the Plaintiff was pre-offered was not a PACT position. Id. at 3:29 PM. Out of the four MSA positions hired for Mayagüez during the time frame that Plaintiff's position was put on hold, three of them were PACT positions. Id. at 2:23–2:24 PM, 3:29 PM. However, Alemán could not remember what type of MSA position the fourth one was. Id. at 3:32 PM.

---

[8] While Plaintiff acknowledged that different MSAs are assigned to different sectors of the Veterans Administration, he did not think that each sector required different actions and duties. Trial, Dec. 18, at 11:32–11:33 AM. However, Alemán testified that there are different types of MSAs and they have different responsibilities. Trial, Dec. 19, at 11:01 AM, 3:29 PM. The testimony that there are different types of MSAs is persuasive because of Aléman's extensive experience working in the recruitment and staffing section of the VA hospital, her detailed testimony on the difference between non-PACT MSA and PACT MSA positions, and the Approved Positions Document (Gov't Ex. D) listing different types of Medical Support Assistants (see rows 20, 21, 23, and 66).

[9] A non-PACT MSA position has duties that entail checking if the veteran is entitled to benefits, scheduling, and paying the veterans for travel benefits. Trial, Dec. 19, at 3:30 PM; see also Ex. A, at 145–146. While a PACT MSA position is part of the team of professionals that deals with the scheduling and the treatment of a patient. Trial, Dec. 19, at 3:30 PM. Teams would have a doctor assigned, nurses, MSAs, and a panel of veterans that the team always works with. Id. at 3:31 PM. This includes medical support in specialized areas like gastroenterology and cardiology. Id. at 3:30 PM. Moreover, the position of the MSA was changed from an administrative position to a hybrid title 38, direct patient care position. Id. at 3:31 PM.

The position that Plaintiff was selected for was put on hold around the end of December 2010 and eliminated a few months later. Ex. III; Ex. V; see id. at 3:32–3:33 PM. According to Alemán, in the case of MSA for travel, which was the position that Plaintiff was selected for, the same was eliminated not because of Plaintiff's age, but rather because the duties of the person who left that position was distributed among the MSAs who were already there in Mayagüez. Trial, Dec. 19, at 11:01–11:02 AM, 3:33 PM.

Plaintiff filed a formal complaint of discrimination on January 22, 2014. Ex. X, ¶ 8. A final Agency Decision was issued on September 19, 2014. Id. Plaintiff filed the instant Complaint on October 30, 2014. Id.; ECF No. 1.

## III.    ANALYSIS

The Age Discrimination in Employment Act ("ADEA") "provides the exclusive federal remedy for age discrimination in employment." Tapia-Tapia v. Potter, 322 F.3d 742, 745 (1st Cir. 2003) (citing Lafleur v. Tex. Dep't of Health, 126 F.3d 758, 760 (5th Cir. 1997); Chennareddy v. Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991); Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1369 (4th Cir. 1989)). The federal sector provision of the ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 73 (1st Cir. 2011); Sánchez-Bonilla v. Shinseki, Civ. No. 11-1322CCC, 2013 WL 496097, at *2 (D.P.R. Jan. 31, 2013) (applying the "federal sector provision of the ADEA," 29 U.S.C. § 633a, when the plaintiff alleged age discrimination against her employer, the Department of Veterans Affairs.).

Where there is no direct evidence of discriminatory animus, "the burden of producing evidence is allocated according to the now-familiar *McDonnell Douglas* framework." Greenberg

v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir.1994)); Richardson v. Mabus, 203 F. Supp. 3d 86, 163 (D. Me. 2016). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Greenberg, 48 F.3d 22, 26; Sanchez, 37 F.3d at 719. If the plaintiff establishes a prima facie case then the burden of production shifts to the employer, as the burden of persuasion remains at all times with the plaintiff, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (citing Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1111 (1st Cir. 1989); Menzel v. Western Auto Supply Co., 848 F.2d 327, 328 (1st Cir. 1988); Texas Dep't Of Community Affairs v. Burdine, 450 U.S. 248, 253, 256 (1981); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)). The burden then falls back on the plaintiff, who must show that the employer's reason was a "pretext," thus allowing the factfinder to infer discriminatory animus behind the challenged employment action. Id.; Rivera Rodríguez v. Sears Roebuck De Puerto Rico, Inc., 367 F. Supp. 2d 216, 223 (D.P.R.) (citations omitted), aff'd, 432 F.3d 379 (1st Cir. 2005). Ultimately, the plaintiff's burden is to prove by a preponderance of evidence that age was the cause of the employer's adverse action. See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447–48 (1st Cir. 2009) (citations omitted).

    A.    **Prima Facie Case**

The required prima facie showing is not especially burdensome. See Greenberg, 48 F.3d at 26; Sánchez, 37 F.3d at 719. A prima facie case must be custom-tailored to fit both the particular animus (*e.g.,* age discrimination, sex discrimination, race discrimination) and the particular type of employment decision involved (*e.g.,* failure to hire, failure to promote, failure to retain). Sánchez, 37 F.3d at 719. In an age discrimination case for failure to hire where there is no direct

evidence of age animus, plaintiff must establish a prima facie case by presenting evidence that: "'(1) [he] is a member of a protected class,[10] (2) [he] applied and was qualified for the position in question, (3) that despite ... [his] qualifications, [he] was rejected, and (4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications.'" Rivera Rodríguez, 367 F. Supp. 2d at 223 (quoting Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994)).[11]

Defendant concedes that Plaintiff established the first three elements of the prima facie case. ECF No. 105, at 2; Trial, Dec. 18, at 12:07–12:08 PM. Thus, the only part of the prima facie case in contention for this ADEA failure to hire claim is the fourth element. Within the First Circuit, some courts have stated that the fourth element is that the position remained open and the employer continued to seek to hire for that position and other courts have required that someone else actually be hired. Compare Santiago-Hernández v. Puerto Rico Danka, Inc., 363 F. Supp. 2d 66, 72 (D.P.R. 2005) (citation omitted) ("(4) that, after rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications."), and Boyajian v. Starbucks Corp., 587 F. Supp. 2d 295, 304 n.4 (D. Me. 2008) ("(4) that, after her rejection, the position remained open and the employer continued to seek applicants with plaintiff's

---

[10] An individual who is at least 40 years old is in a protected class. Paz v. Potter, Civ. No. 05-1791 JAF, 2006 WL 3702653, at *5 (D.P.R. Dec. 13, 2006); 29 U.S.C. § 633a(a) ("All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."); 29 U.S.C. § 631(b) ("Employees or applicants for employment in Federal Government[:] In the case of any personnel action affecting employees or applicants for employment which is subject to the provisions of section 633a of this title, the prohibitions established in section 633a of this title shall be limited to individuals who are at least 40 years of age.").

[11] The First Circuit case of Woods, which was cited to in Rivera Rodríguez, was abrogated by the Supreme Court in 2000. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 141 (2000). However, it was abrogated on other grounds and not on the four elements of an age discrimination claim for a failure to hire. Id. at 140 ("We granted certiorari to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination, combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination." (citations omitted)). While the first three elements remain the same within the First Circuit, the fourth element has varied within district courts as addressed below.

qualifications."), with Meléndez v. SAP Andina y del Caribe, C.A., 518 F. Supp. 2d 344, 359 (D.P.R. 2007) ("(4) that the employer hired someone younger."), Paz v. Potter, Civ. No. 05-1791 JAF, 2006 WL 3702653, at *5 (D.P.R. Dec. 13, 2006) (discussing both sex and age discrimination for failure to hire: "(4) the job was given to someone outside the protected group with roughly equivalent or lesser qualifications."), and Joyce v. Postmaster Gen., U.S. Postal Serv., 846 F. Supp. 2d 268, 287 (D. Me. 2012) (describing generally the elements for a prima facie claim of failure to hire in a case involving an ADA claim, an ADEA claim, and a gender-based Title VII claim: "(4) that a person possessing similar or inferior qualifications was hired."). The First Circuit stated in an unpublished opinion that "[t]his circuit does not require plaintiffs to prove that persons outside the protected age group were hired in order to establish a prima facie case of age discrimination." Sack v. Bentsen, 51 F.3d 264, 1995 WL 153645, *4 (1st Cir. 1995) (unpublished) (citing Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 n.7 (1st Cir. 1994)). Regardless of whether an individual had to be hired under the fourth element, the results in this case are the same.

Before beginning the analysis on the fourth element, there is the issue of whether Plaintiff was ever given a final offer. Plaintiff's pre-offer of employment letter dated December 8, 2010, does not make it clear on whether Plaintiff obtained a final offer after completing a physical examination and background check. Ex. II. The first paragraph supports the argument that Plaintiff would have a final offer by completing a physical examination: "[y]ou have been tentatively selected for a permanent full-time Career Conditional Appointment as a Medical Support Assistant . . . . Employment will be contingent upon your successful completion and passing of a physical examination." Ex. II.[12] The parties stipulated that Plaintiff successfully completed a security and background check, and a medical screening. Ex. X, ¶ 3. Nonetheless,

---

[12] Plaintiff believed that after he finished the "in processing," he was hired. Trial, Dec. 18, at 9:43 AM.

the second paragraph of this letter states that once a background investigation is complete, Plaintiff was required to bring a signed Investigation Request Signature and a Release of Information Form "<u>before or the same day we provide you the final offer of employment letter.</u>" Ex. II (emphasis in original). This indicates that the medical exam was not the final step in the hiring process as Plaintiff would eventually receive a final offer of employment.

The latter interpretation is corroborated by Alemán's testimony that a pre-offer letter is not a final offer and an applicant does not become an employee until they receive and accept a final offer. Moreover, an applicant will remain in pending status until there is an approval of their final offer, even if they have completed the background check and medical screening requirements. Additionally, a letter from the Department of Veterans Affairs to Congressman Pedro Pierluisi in regards to a congressional inquiry dated December 21, 2012, indicates that while Plaintiff was given a pre-offer of employment, his position, as well as many positions for other candidates with the same status, were put on hold and eventually canceled. Ex. III; <u>see</u> Ex. V. Thus, while the Plaintiff's confusion on whether he was an employee is understandable, the Plaintiff was not given a final offer of employment.

In order to establish the fourth element, Plaintiff must first show that the position he applied for was not eliminated but in fact remained open. The parties stipulated that Plaintiff applied for an MSA position at the Veterans Administration Clinic in Mayagüez, Puerto Rico in November of 2010. Ex. X, ¶ 1. Furthermore, the parties stipulated that four MSA positions were filled at the Mayagüez VA facility in December 2010, January 2011, February 2011, and July 2012. <u>Id.</u> ¶ 6. However, it was established that not all MSA positions are the same. Moreover, Plaintiff has not provided evidence to show that the four MSA positions that were hired were the same as the MSA position he applied to. Plaintiff testified that he never requested or read the position descriptions

for the MSA positions that were hired after his application was put on hold and thus did not know what skills or duties they required. Trial, Dec. 18, at 11:35, 11:41–42 AM.

Furthermore, the Defendant brought forth evidence to show that these four MSA positions were not the same as the position that Plaintiff applied for. Based on the testimony of Alemán, at least three of the four MSA positions that were hired for Mayagüez were PACT positions whereas the position Plaintiff applied for was not.[13] PACT positions were funded positions so they were approved to be filled and were not affected by the budget constraints. Moreover, PACT MSA positions have different responsibilities and duties than non-PACT MSA positions. Trial, Dec. 19, at 3:30 PM. A non-PACT MSA position has duties that include scheduling, checking into what benefits a veteran is entitled to, and paying veterans for travel benefits. While an MSA PACT position involves an MSA that is part of a team that works with a specific panel of veterans. Id. at 3:30–3:31 PM. This includes specialized areas, such as gastroenterology or cardiology. Id. at 3:30 PM. Thus, a different MSA in another section would not make an appointment with a doctor within a PACT team, but rather everything would be conducted within each specific team itself. Id. at 3:31 PM. Therefore, as Alemán could only speak to three of the four positions hired, there is at most one position that may have been the same as Plaintiff's position. Nonetheless, Plaintiff ultimately has the burden to provide evidence to show that the position he applied to remained open but Plaintiff failed to do so here.

---

[13] Plaintiff testified that he did apply for a PACT position. Trial, Dec. 18, at 9:40, 11:47 AM. Plaintiff described this position as receiving the patient when they come in and guiding them to the health care provider. Id. at 11:47–11:48 AM. Moreover, when the patient is done with that appointment, the MSA will look in the system for future appointments. Id. at 11:48 AM. This description is in line with the Medical Support Assistant (cashier) description document, which states that the MSA will receive patients referred for medical assistance. Gov't Ex. A, at 145. However, this document does not state anything about a PACT position. See id. Alemán testified that the position described in this document was the position that Plaintiff applied for. Trial, Dec. 19, at 10:01 AM, 12:11 PM. Moreover, Alemán testified that the position Plaintiff applied for was not a PACT position. Id. at 3:29 PM.

Moreover, even if the fourth position that Alemán was unable to provide information about was the same as Plaintiff's position, Plaintiff has not provided evidence on the qualifications of the individual that was hired as required by the fourth prima facie element. At trial, Plaintiff claimed that in regards to applicants with the same qualifications, he would have preference because of his veteran and disabled status. Id. at 10:37 AM; Ex. I. Plaintiff's counsel has requested that this court take judicial notice of manuals and handbooks that may illuminate this claim. ECF Nos. 102, 103; Trial, Dec. 18, at 10:35 AM. Yet, this does not illustrate whether the individuals hired had the same or inferior qualifications as the Plaintiff. See ECF Nos. 111, 112. Additionally, the Veterans Affairs Caribbean Health System, in all its clinics, hired from outside the facility seventeen MSA positions from December 1, 2010 to December 31, 2012. Ex. VIII.[14] Moreover, "[o]ut of the **17** hires: **12** were Veterans with preference, **2** under Schedule A appointment (People with targeted disabilities), and **3** non vets." Id. (emphasis in original). Thus, other applicants were also veterans with preference. Moreover, "[w]hile the burden of establishing a prima facie case is 'not onerous,' the plaintiff is still required to prove the prima facie elements by a 'preponderance of the evidence.'" Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 131 (1st Cir. 2015) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, (1981)). The Plaintiff did not meet this burden. The Plaintiff failed to provide evidence in regards to the individuals hired, thus it remains to be seen whether the individuals hired to the four MSA positions had similar, lesser, or superior qualifications than the Plaintiff.

Furthermore, even if the fourth position was the same as Plaintiff's and the individual hired had the same or lesser qualifications as Plaintiff, Plaintiff has still not met his burden under the fourth element. The First Circuit "has held that a three-year age difference between a plaintiff and

---

[14] Four MSAs were hired at the Mayagüez clinic during this time frame. Ex. VIII, at 1.

his replacement is 'too insignificant to support a prima facie case of age discrimination.'" Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 131 (1st Cir. 2015) (quoting Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir.2000)). Plaintiff's evidence for the age of the individuals hired to MSA positions during the time frame that his position was put on hold was his own testimony. Plaintiff was able to testify that three of the individuals were at least ten and a half years younger than him. However, Plaintiff was only able to testify that the fourth individual was younger than him. Plaintiff could not remember how much younger, thus the extent of the age differential is unknown. Therefore, even if one of the positions was the same or similar to Plaintiff's position, it was not necessarily filled by someone significantly younger than him.

Therefore, Plaintiff's prima facie claim fails under the fourth element. Furthermore, even if Plaintiff had established a prima facie case, Plaintiff's argument fails under the pretext analysis as well.

### B. Legitimate Non-Discriminatory Reason

If Plaintiff had established a prima facie case, then an inference of discrimination would have arisen. Sánchez, 37 F.3d at 720 (citing Mesnick, 950 F.2d at 823–25). When this occurs, the burden then "switches to the employer to articulate a legitimate nondiscriminatory reason for the challenged action." Id. At this point, the burden of production is on the employer who "merely must 'set forth, through the introduction of admissible evidence, reasons for its action which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action.'" Id. (emphasis in original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). Here, the Department of Veterans Affairs has established a legitimate nondiscriminatory reason: budget constraints, which resulted in open positions being put on hold and ultimately eliminated. Valle-Santana v. Servicios Legales De P.R., Inc., Civ. No. 12-1506

SCC, 2014 WL 4215543, at *3 (D.P.R. Aug. 25, 2014), aff'd sub nom. Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127 (1st Cir. 2015) (granting summary judgment and dismissing ADEA claim with prejudice when the employer stated that the plaintiff was fired "because of reduction in force necessitated by serious budget shortfall," and plaintiff "produced *nothing* to demonstrate that this [was] pretext."). Since the burden of production was met by the Defendant here, the inference of discrimination disappears. Sánchez, 37 F.3d at 720 (citing St. Mary's, 509 U.S. at 507 (1993)); González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

### C. Pretext

The burden now falls back on the Plaintiff, who must show that the employer's reason was a "pretext," thus allowing the factfinder to infer discriminatory animus behind the challenged employment action. Rivera Rodríguez, 367 F. Supp. 2d at 223 (citations omitted). As the First Circuit has stated, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" Mesnick, 950 F.2d at 824 (quoting Medina–Munoz, 896 F.2d at 9). However, the question of whether a "but for" or a "mixed motive" burden of proof is required under the federal sector provision of the ADEA has not been fully addressed by the First Circuit. Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 74 (1st Cir. 2011) ("In *Gross,* the Supreme Court held that, under the *private*-sector anti-discrimination provision of the ADEA, the plaintiff must 'establish that age was the "but-for" cause of the employer's adverse action.' [*Gross v. FBL Financial Services, inch*, 557 U.S. 167, 177 (2009)]."); Sánchez-Bonilla, Civ. No. 11-1322CCC, 2013 WL 496097, at *2; Murphy v. Mattis, Civ. No. 2:14-CV-00400-JAW, 2017 WL 1157086, at *39 n. 77 (D. Me. Mar. 27, 2017). Under the "but for" framework, "plaintiff would be required to show that age was the 'but-for' cause of the employer's adverse action." Sánchez-Bonilla, Civ. No. 11-1322CCC, 2013

15

WL 496097, at *2.  While "[u]nder the less rigorous 'mixed motive' framework, plaintiff must show that the adverse employment action she suffered was caused at least in part by her age." Id.

Nonetheless, like the First Circuit in Velázquez-Ortiz v. Vilsack, we need not reach the issue as Plaintiff cannot meet his burden even under the less rigorous "mixed motive" burden. Velázquez-Ortiz, 657 F.3d 64 at 74 ("[W]e need not reach the issue because, even under the less rigorous "mixed motive" burden for which [plaintiff] advocates, she cannot overcome summary judgment on her age discrimination claim."); Sánchez-Bonilla, Civ. No. 11-1322CCC, 2013 WL 496097, at *3 ("Even applying the 'mixed motive' framework to plaintiff's ADEA claim, she fails to meet its burden."). "[E]ven in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003). Here, the Plaintiff has not provided enough evidence to show that the Defendant's non-discriminatory reason was a sham or that the Defendant's failure to hire him was caused at least in part by age discrimination.

First, there is no indication that Defendant's proffered legitimate non-discriminatory reason of budget constraints was a sham or pretext. Alemán's testimony in regards to a recruitment report for the VA hospital from February 4, 2011, Government Exhibit D, established that numerous positions were put on hold during this time period, including that of Plaintiff. Furthermore, Alemán testified that Plaintiff's position was ultimately canceled because the duties of that position was distributed among the MSAs already working in Mayagüez. Plaintiff has not produced evidence to counter either of these claims or to show that the budget constraints were "pretext." Rather, based on the evidence, many positions were placed on hold within the VA

because of budget constraints during the relevant time period and Plaintiff's position was canceled because already employed individuals at the VA took on the responsibilities of that job.

Furthermore, as discussed above, Plaintiff has not provided evidence to show that the four positions hired in Mayagüez were the same as the position that he applied for or that the individuals hired had the same or lesser qualifications than himself. The burden of persuasion is at all times on the Plaintiff, and the Plaintiff has not met that burden here.

**IV.  CONCLUSION**

At trial, Plaintiff was asked if "you're basing your belief that you were discriminated against because of your age only because some MSAs that were hired were younger than you, correct?" Trial, Dec. 18, at 11:09 AM. Plaintiff testified that this was "correct." Id. However, simply claiming that somebody younger was hired is not enough. Plaintiff has failed to establish that he had a final offer of employment, as well as the fourth prong of the prima facie case of age discrimination. Moreover, even if Plaintiff had established a prima facie claim, Plaintiff failed to prove by a preponderance of evidence that Defendant's legitimate non-discriminatory reason was a pretext for age discrimination. Therefore, judgment shall be entered in favor of the Defendant.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 27th day of March, 2018.

s/Marcos E. López
U.S. Magistrate Judge